**Yahya BICAKSIZ, Petitioner,**

v.

**UNITED STATES of America, Respondent.**

**No. 00 CV 1354.**

United States District Court, E.D. New York.

Nov. 27, 2002.

Ronald L. Kuhy, New York City, Pro se.

Jo Ann M. Navickas, Asst. U.S. Atty., Brooklyn, NY, for Respondent.

### *MEMORANDUM AND ORDER*

GERSHON, District Judge.

On direct appeal, the Court of Appeals for the Second Circuit affirmed Yahya Bicaksiz's conviction of interstate travel to commit a murder for hire and conspiracy. *United States v. Bicaksiz*, 194 F.3d 390 (2d

Cir.1999), *cert. denied* 528 U.S. 1161, 120 S.Ct. 1175, 145 L.Ed.2d 1083 (2000). Among other things, the Court of Appeals upheld the imposition of separate sentences on each count, which were run consecutively to effectuate the Sentencing Guidelines. *See Bicaksiz* 194 F.3d at 394 and n. 2. The Court also upheld this court's denial of a downward departure motion at sentencing based upon alleged ineffective assistance of counsel. 194 F.3d at 397–98. Bicaksiz then filed this motion under 28 U.S.C. § 2255 raising the identical claim. The motion, brought by Ronald L. Kuby, Esq., who represented Bicaksiz at the sentencing and on direct appeal, claims that, as a result of the ineffective assistance of counsel Bicaksiz received from attorney Jeffrey Cohn, Esq., who represented him at trial, Bicaksiz was deprived of the opportunity to plead guilty. Specifically, the motion alleges that Bicaksiz was told by Cohn that there was no benefit to pleading guilty, as his maximum sentencing exposure was ten years, which he would receive whether he pled guilty or went to trial because the applicable guidelines called for a sentence exceeding ten years. In his affidavit in support of the motion, Bicaksiz states that he would have pled guilty if he could have gotten a range of 135 to 168 months, rather than 188 to 235 months, the range found applicable at the sentencing. An evidentiary hearing was held, at which Bicaksiz, Cohn, Pamela Metzger, Esq., who represented Bicaksiz during the pretrial proceedings, and the prosecutor, AUSA David Hennessy, testified.

■ In order to establish ineffective assistance of counsel in this context, a criminal defendant has the burden of showing both that the advice he received concerning the alternatives relevant to the decision to plead guilty or go to trial fell below an objective standard of reasonableness and that he suffered prejudice as a

result. To establish prejudice, the defendant must establish a reasonable probability that, if he had been given complete and accurate information, he would have pled guilty instead of going to trial. *See Aeid v. Bennett,* 296 F.3d 58, 62 (2d Cir.2002); *see also United States v. Gordon,* 156 F.3d 376 (2d Cir.1998). Based upon the credible evidence at the hearing, and the objective circumstances surrounding Bicaksiz's allegations, I now conclude that Bicaksiz has met neither prong of the ineffectiveness standard.

■ As to the first prong, the credible evidence established that Bicaksiz was indeed aware, prior to the start of the trial, of the uncertainty as to whether the sentences on the two counts would run consecutively and thus expose him to a maximum statutory penalty of twenty, rather than ten, years. Metzger's testimony establishes that she told both Bicaksiz and Cohn of this uncertainty. And, strikingly, Bicaksiz himself acknowledged that he was aware of this possibility. He testified that he knew his exposure was "twice ten years," meaning to him "a total of twenty years." Tr. of hearing, pp. 37–38. To the extent the testimony of Metzger differs from that of Cohn or Bicaksiz, Metzger's testimony is credited. Thus, Bicaksiz received objectively reasonable advice from Metzger as to his sentencing exposure and was specifically told that there was a possibility that the sentences on the two counts would run consecutively. Even if Cohn subsequently advised him that his maximum exposure was ten years, given Bicaksiz's admitted understanding of the actual exposure, Bicaksiz did not labor under objectively unreasonable advice as to his exposure.

■ Even if Cohn's advice is treated as objectively unreasonable and as sufficient to meet the first prong, Bicaksiz fails to establish that it caused him prejudice. By

all accounts, prior to the trial, Bicaksiz was adamant in asserting his innocence and about going to trial quickly. While not determinative, a defendant's insistence upon his innocence is relevant to an evaluation of prejudice. *See Mask v. McGinnis,* 233 F.3d 132, 142 (2d Cir.2000); *see also Cullen v. United States,* 194 F.3d 401, 407 (2d Cir.1999).

In keeping with his assertions of innocence, Bicaksiz expressed no interest in a plea, even one, which Cohn broached unsuccessfully with the prosecutor, to a reduced charge carrying only a several year penalty. No plea was offered to Bicaksiz by the prosecution, and the only evidence as to what kind of plea the government might have accepted is one which would have entailed something at or near a ten year sentence, *if* that was what was called for by the guidelines. In fact, the guidelines called for a sentence at level 36, of 188 to 235 months; had he pled to the indictment, and received three levels off for acceptance of responsibility, the offense level would have been 33, and the range would have been 135 to 168 months. Assuming that the government might have accepted a plea to one count of the two charged, the maximum would have been 120 months or ten years.

Even if I assume, despite the absence of evidence of what the government might have accepted, that there was a wide disparity between the sentence imposed and what the government would have accepted had the defendant been willing to plead guilty, I nonetheless reject as incredible any claim by Bicaksiz that he in fact would have pled guilty to a crime exposing him to ten years in prison. *See Cullen,* 194 F.3d at 407–408; *see also Gordon,* 156 F.3d at 381. At the evidentiary hearing, Bicaksiz testified that, if he had known he faced twenty years, he would have "accepted" ten years. On cross-examination, however-

er, Bicaksiz said he would have "accepted" a plea and that he was "admitting" and "accepting" guilt, but he declined to admit, and in fact vehemently denied, that he had tried to have his brother-in-law murdered. When asked specific questions regarding the facts of the case, as established at the trial, Bicaksiz adamantly denied their truth. Thus, notwithstanding his conclusory protestation at the hearing that he would have "accepted" a guilty plea, if it meant getting ten years rather than the nearly eighteen years to which he was sentenced, I find, based on his own testimony and the testimony of the attorneys, that Bicaksiz would not have pled guilty and would have continued to insist on going to trial, even if Cohn had told him that he might face a statutory maximum of twenty years upon conviction after trial, and had described the evidence as strong and his likelihood of an acquittal as weak. In sum, Bicaksiz has not shown a reasonable probability that, had he been fully and properly advised, he would have pled guilty rather than going to trial.

This conclusion has been reinforced by Bicaksiz's recent submissions, addressed below, in which he avows, in sworn statements that he is innocent of the charges and never conspired to murder anyone. Indeed, Bicaksiz confirms that "I maintained my innocence throughout trial and in this instant § 2255 proceeding." Even though he was fully aware of the ineffectiveness issue raised by his attorney at sentencing, on appeal and in this motion, and of his attorney's statement that the evidence at trial was "overwhelming," he not only asserts his innocence but refuses to acknowledge the strength of the government's case, *cf. North Carolina v. Alford,* 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970); rather, he simply denies the truth of the evidence and attempts to explain it away.

Under these circumstances, any possibility that he would have pled guilty must be viewed as fanciful. As stated by then District Judge Parker in *Gluzman v. United States*, 124 F.Supp.2d 171, 178 (S.D.N.Y. 2000): "Where the government does not offer a plea, and where the client insists that she did not participate in the crime, a failure successfully to negotiate a plea does not amount to ineffective assistance of counsel." Moreover, here as in *Gluzman*, there can be no prejudice where defendant's "persistent claims of innocence would have rendered highly problematic [his] ability adequately to allocute in view of the requirements of Fed.R.Crim.P. 11." *Gluzman*, 124 F.Supp.2d at 178. In sum, since correct advice from defense counsel would not have altered the defendant's decision to go to trial, there has been no prejudice. *Aeid*, 296 F.3d at 64.

In light of this conclusion, there is no need to address what remedy might be available to Bicaksiz had he established that a constitutional violation had occurred.

Finally, I note that, in August of this year, after the evidentiary hearing had been held and all papers filed, Bicaksiz, acting pro se, brought the following new motions: (a) to correct the judgment to reflect that he had been sentenced to concurrent terms; (b) to "disqualify" as defense counsel the attorney who represents him on this motion; (c) to obtain an order for my recusal; and (d) to proceed pro se. Treating these new claims as amendments to the original Section 2255 motion, *see Ching v. United States*, 298 F.3d 174 (2d Cir.2002), they are denied as without merit.

■ The sentencing claim is that, because I stated at sentencing that Bicaksiz was being sentenced to 120 months on Count One and 95 months on Count Two "in accordance with the grouping," I intended to sentence him to concurrent terms and that the judgment, in imposing consecutive terms, is in error. This claim is without merit. I clearly intended to impose the sentence reflected in the judgment, making the terms consecutive in order to meet the requirements of the sentencing guidelines. The reference to the "grouping" is to the provision in the guidelines for considering the two offenses together in calculating the appropriate offense level. The determination that the sentences run consecutively was determined by the necessity to impose the sentence required under the guidelines once the offense level had been determined.

■ The recusal motion is frivolous, Bicaksiz alleges that I am biased against him and against Arabs as demonstrated by my imposition of consecutive sentences despite his professed innocence and the purported weakness of the government's case. This allegation is based solely upon rulings that were made in a judicial capacity in this case and does not include any allegation of extrajudicial influences beyond petitioner's unsupported speculation that I am biased. *See e.g. Liteky v. United States*, 510 U.S. 540, 114 S.Ct. 1147, 127 L.Ed.2d 474 (1994). Such naked accusations are insufficient to support recusal.

■ Bicaksiz asks to be allowed to proceed pro se and to "disqualify" his retained attorney on this Section 2255 motion. He argues that his counsel was ineffective on the motion as a basis for bringing additional claims that counsel did not raise, in order to avoid the strictures of the second or successive petition rule of the Antiterrorism and Effective Death Penalty Act, 28 U.S.C. § 2244. *See Ching*, 298 F.3d at 176. Bicaksiz's requests to proceed pro se and to "disqualify" his retained attorney are moot. The issue raised by counsel was

fully submitted and is resolved in this decision. In addition, as noted above, I have in fact considered petitioner's recent motions, brought pro se, as amendments to the petition. In any event, beyond the meritless sentencing claim, the only suggestion in Bicaksiz's papers of an alternative ground that counsel should have presented in the Section 2255 motion is that counsel, on the motion, should have attempted to establish Bicaksiz's innocence. That of course would have been a complete contradiction of the effort to establish a reasonable probability that Bicaksiz would have pled guilty and received a lower sentence if properly informed by counsel, an effort in which Bicaksiz participated directly, by filing an affidavit and testifying at the hearing. Moreover, treating the claim of innocence as a separate claim for relief, Bicaksiz offers no factual support for a claim of actual innocence, other than his own conclusory affidavit, and the jury, based upon the trial evidence, summarized on direct appeal at 194 F.3d at 392–93, concluded that he was guilty.

In sum, none of Bicaksiz's claims for relief under Section 2255 has merit. Therefore, the motion is denied. As Bicaksiz has not presented a "substantial showing of the denial of a constitutional right," a certificate of appealability is denied. *See* 28 U.S.C. § 2253.

**SO ORDERED.**